[Crim. No. 25361. May 19, 1988.]

THE PEOPLE, Plaintiff and Appellant, v.
ERIC FORD, Defendant and Respondent.

COUNSEL

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, W. Scott Thorpe, Eddie T. Keller and Shirley A. Nelson, Deputy Attorneys General, for Plaintiff and Appellant.

Catherine Aragon, under appointment by the Supreme Court, for Defendant and Respondent.

OPINION

EAGLESON, J.—Subdivision (a) of Evidence Code section 913 states: "If in the instant proceeding or on a prior occasion a privilege is or was exercised not to testify with respect to any matter, or to refuse to disclose or to prevent another from disclosing any matter, neither the presiding officer nor counsel may comment thereon, no presumption shall arise because of the exercise of the privilege, and the trier of fact may not draw any inference therefrom as to the credibility of the witness or as to any matter at issue in the proceeding."[1]

In this case we consider whether that statutory proscription of comment on the exercise of a privilege, or any other statute, constitutional provision, or rule precludes comment by the prosecutor on defendant's failure to call his former codefendants as witnesses to support his alibi defense. We consider, in particular, whether, in the absence of an actual exercise of privilege by an otherwise available potential witness, comment is precluded because the witness should be deemed to be "unavailable."

The privilege in issue here is the privilege against self-incrimination. A jury convicted defendant of first degree burglary. (Pen. Code, § 459.) The trial court then granted defendant's motion for new trial, concluding that the prosecution's comment on defendant's failure to call his former codefendants to support his testimony was prejudicial misconduct. On appeal by the People taken pursuant to Penal Code section 1238, subdivision (a)(3), the Court of Appeal disagreed, reversed the order granting a new trial, and remanded the matter with instructions to deny the motion and impose sentence.

We conclude that a witness who has not exercised his privilege against self-incrimination is not an "unavailable" witness. Absent a stipulation that

---

[1] Unless otherwise indicated, all statutory references are to the Evidence Code.

the witness would validly assert the privilege comment is permissible. Because defendant did not call the witnesses and the trial court did not determine that they could exercise their privilege against self-incrimination, the prosecutor's comment was proper. Therefore, we shall affirm the judgment of the Court of Appeal.

I

Defendant Ford, and his alleged accomplices Paul Bridges, Thomas Cooper, and Napoleon Elder were charged with burglary. Before defendant came to trial, Cooper and Bridges had been convicted, on their pleas of guilty, of being accessories to a felony (Pen. Code, § 32), but had not yet been sentenced. Elder, whose trial had been severed, had not been tried.[2] Therefore, each could have exercised the privilege against self-incrimination had he been called by defendant as a witness at the trial of defendant if answering the questions put to him could possibly have had a tendency to incriminate the witness. (Cal. Const., art. I, § 15; § 940; *People* v. *Kizzee* (1979) 94 Cal.App.3d 927, 938-939 [156 Cal.Rptr. 784].) At that trial the following evidence was presented.

About 10:15 a.m., on April 11, 1984, Christeen Martinez, was visiting her mother-in-law, Irene Martinez. Christeen observed defendant and a Black man conversing with an Hispanic man seated in a rusty green car with a white top parked across the street from the Martinez home. She noticed the three men frequently glance up and down the street as they talked. After approximately 10 minutes they drove away. Shortly thereafter, Christeen and Irene went to the nearby home of Shirley Brushia Williams, described the men and the automobile, and told her to "keep an eye on the street."

The next day, at approximately 10 a.m., while driving home Shirley noticed a White man and a Black man walking down the street who fit the description provided by Christeen and Irene.[3] Shirley continued down the street, parked in a cul-de-sac, and waited for the men to walk toward her. As she waited she observed a Black man and another man driving in a rusty green car with a white top, but did not notice the White man and the Black man she had observed earlier. Her suspicions aroused, Shirley returned home and called the sheriff's office. Waiting for the police to arrive, Shirley, Irene Martinez, Patricia Blair, and several other neighbors huddled on the

---

[2] Elder pleaded guilty to first degree burglary after the trial and conviction of defendant.

[3] Shirley was unable to identify defendant as one of these men, but testified that the White man she had seen wore the same clothing as that worn by defendant when arrested, a white T-shirt and Levis. Defendant's girlfriend testified that when he left her house that morning he wore a black coat, blue pants, and a dark blue sweatshirt, a description consistent with the booking photo taken of defendant after his arrest.

sidewalk and within moments observed the green car make two slow passes. Once the car was out of sight the women returned to their homes. While peering out toward the street Patricia Blair observed defendant and a Black man emerge from the yard of a nearby house at 5025 Springfield Way, proceed down Springfield and eventually stop near the green car.[4] Defendant and the Black man were near the green car when Officer Carlson arrived on the scene and began to question them.

While the men were being questioned Patricia Blair approached the home located at 5025 Springfield, opened an unlocked gate, looked through a nearby window, and observed a stereo and other items stacked in a pile. She promptly informed Officer Carlson of her discovery. After learning that all four men had been seen in the area and that defendant and the Black man had been seen leaving the property at 5025 Springfield, Carlson arrested defendant, Bridges, Cooper and Elder.

Linda Jo Klement, the owner of the home located at 5025 Springfield, testified that several of the rooms had been ransacked and her stereo, clock radio, television, and several other items were either stacked or in pillow cases near the front door. She also noticed the front door was unlocked, the screen removed from a kitchen window, and the window was opened much wider than it had been when she left home that morning.

Defendant also testified. He denied any involvement in the burglary. He stated that after spending the morning at the apartment of his girlfriend, Jennifer Pace, he went to the home of Thomas Cooper, arriving there before 11 a.m., on April 11, 1984. Before leaving the Pace apartment he had seen Napoleon Elder at some time between 7:30 and 9 a.m. when Elder came to the door to ask if defendant wanted to run. Defendant had declined. He went to Cooper's house because he and Cooper had been looking for jobs and Cooper had a newspaper. He spent the day of April 11 at Cooper's house where he went through the newspaper looking for jobs, lifted weights, and scraped paint off his car. Defendant claimed he and Cooper left the house at one point to visit an acquaintance but otherwise remained at Cooper's most of the day.

Defendant described his whereabouts on April 12, 1984, as follows: Approximately 9 a.m., he arrived at Thomas Cooper's house, having again come from the apartment of Jennifer Pace. Napoleon Elder's girlfriend lived in the apartment across from that of Pace, but defendant had not seen Elder there that morning. Approximately 9:30 a.m., Paul Bridges and

---

[4] When interviewed at the scene Blair described the persons she had seen emerging from the yard as Mexican and Black. Defendant is White.

Napoleon Elder arrived at Cooper's house in Elder's green Ford. Defendant did not know Bridges, but Elder had been on the football team with defendant at American River College. All four men intended to apply for a job that was to be vacated by another friend of defendant and Cooper, and after that to apply for jobs defendant had marked in the newspaper. Shortly thereafter Bridges and Cooper left to put gasoline in Elder's car. Some 15 minutes later Elder, who was irritated at how long Cooper and Bridges were taking, departed. Defendant left shortly thereafter hoping to find Elder, and did so. As defendant joined Cooper and Bridges who were sitting in the front seat and Elder who was standing beside the car, Officer Carlson arrived.

Defendant's evidence regarding his whereabouts on April 11, thus placed him at the home of codefendant Cooper, not on Springfield Way. Not only did that testimony place him at another location, but it placed codefendant Cooper at the other location. His testimony regarding his whereabouts on April 12 again placed him and Cooper, and on this occasion, Elder, at the home of Cooper and away from the house on Springfield Way at the time the burglary was being committed.

During his closing argument the prosecutor made the comment which is the focus of this appeal: "One other thing I would submit to you that it's very convenient that the defendant cannot recall being on Springfield Street on April the 11th. He certainly can't tell you that he was there casing the area. There is just one other point that I would like to make, and that is that if the testimony is indeed true, why didn't he bring in Mr. Cooper, Mr. Elder?"

## II

The Court of Appeal held that the mere existence of a privilege did not render Cooper and Elder unavailable as witnesses, noting that although they were charged with the same offense as defendant, they were competent witnesses who could have been called to determine if they would have exercised their privilege against self-incrimination. The Court of Appeal recognized the possibility, on which the trial court relied, that Cooper and Elder would have asserted a valid claim of privilege, but concluded that it was equally possible that, having already pled guilty to being an accessory and therefore risking no further liability, Cooper might have been willing to testify to exculpate defendant if defendant had not been involved in the burglary. The court also reasoned that because Elder had not yet pled guilty, he might have been amenable to giving testimony that confirmed that neither he nor defendant had been involved.

In reversing the trial court's order granting a new trial, the Court of Appeal relied on the rule stated at 2 Wigmore, Evidence (Chadbourn ed. 1979) section 286, page 201: "When the witness is privileged, and the privilege is independent of the party's control, the witness' claim of privilege renders the party unable to use his testimony; but it would seem that the witness should at least have been summoned and asked, for he may waive his privilege." Because defendant had not attempted to call Cooper or Elder, his claim of prosecutorial misconduct based on a belated assertion that they were "unavailable" was rejected.

■ Defendant argues, and the dissent agrees, that whenever a witness is or was a "codefendant"[5] who *may* exercise the privilege against self-incrimination the witness must be deemed "unavailable" and *comment on* defendant's failure to call him forbidden. We disagree. Such a rule assumes without foundation that any testimony of a codefendant would necessarily incriminate the codefendant, and fails to recognize well established principles governing exercise of the privilege.

Had Elder and Cooper been called by defendant to corroborate his alibi for April 11, their evidence presumably would have shown that Elder was at the Pace apartment at some time between 7:30 to 9 a.m. on April 11, and that Cooper was at Cooper's home or in the company of defendant at a location other than Springfield Way from and after 11 a.m. on April 11. Nothing in the evidence offered at trial suggests that *corroborative* testimony by Elder or Cooper, regarding their whereabouts on April 11 would have had a tendency to implicate them, and thus incriminate them, with respect to the April 12 burglary. Defendant does not argue that such corroborative testimony would have been incriminatory. Rather, he suggests that whenever a witness is an unsentenced codefendant who retains the privilege against self-incrimination the witness must be deemed to be "unavailable."

We address first the assumption inherent in this argument that any assertion of the privilege against self-incrimination by a codefendant, or other witness, is an exercise of the privilege by the holder.

■ The privilege against self-incrimination is, of course, personal and may be asserted only by the holder. (*Rogers* v. *United States* (1951) 340 U.S. 367, 370-371 [95 L.Ed. 344, 347-348, 71 S.Ct. 438, 19 A.L.R.2d 378]; *People* v. *Chandler* (1971) 17 Cal.App.3d 798, 803 [95 Cal.Rptr. 146].)

[5] A potential witness who is literally a codefendant, i.e., who is being tried jointly with the testifying defendant, has a right not to be called to the stand at all. (§ 930.) Our concern here is with persons who may have been accomplices, but who are being tried separately. For convenience, however, we refer to these potential witnesses as "codefendants," the term used by defendant in his argument.

Defendant recognizes that he had no standing to claim the right on behalf of Cooper or Elder. (*People* v. *Varnum* (1967) 66 Cal.2d 808, 812 [59 Cal.Rptr. 108, 427 P.2d 772].) At their own trials Cooper and Elder had a privilege not to be called as a witness and not to testify (§ 930; *Black* v. *State Bar* (1972) 7 Cal.3d 676, 685 [103 Cal.Rptr. 288, 499 P.2d 968]), as well as a privilege against self-incrimination (§ 940; U.S. Const., Amend. XIV; Cal. Const., art. I, § 15), but as witnesses at defendant's trial they had no right not to be called to the stand. (§ 911, subd. (a).) Their whereabouts were known and they were subject to subpoena. They were, therefore, literally "available."

■ It is well established moreover that in order to assert the privilege against self-incrimination a witness must not only be called but must also be sworn. (*Ex parte Stice* (1886) 70 Cal. 51, 53 [11 P. 459]; *People* v. *Harris* (1979) 93 Cal.App.3d 103, 117 [155 Cal.Rptr. 472].) Were we to accept the proposition that a witness is "unavailable" because he might claim the privilege if called, that prerequisite to exercise of the privilege would be abandoned and the reasons for its existence ignored.

The primary reason for the requirement that the witness be called and sworn was set forth by this court more than a century ago in *Ex parte Stice, supra,* 70 Cal. 51, 53: "It is no answer to a refusal to be sworn that the petitioner asserted at the time as a reason for such refusal that his testimony would have a tendency to subject him to punishment for a felony. Such a privilege cannot be urged by the witness until a question is put to him after being sworn, the answer to which would have the tendency stated above. Whether the answer to such question would or might be of such tendency, the court in which the trial is proceeding must adjudge (Wharton's Crim. Ev., 9th ed., sec. 469), and it cannot be called on to do so in advance of the question being put. To hold that the reason stated above would justify a person called in refusing to be sworn would be to make such person, and not the court, the final judge, and exclude the court from any consideration of the matter whatever. Such is not and cannot be the law."

■ It is still the law that a witness does not have an unqualified right to exercise the privilege against self-incrimination, and unless the question clearly calls for an incriminating answer the witness who has asserted the privilege bears the burden of satisfying the court that an answer would have a tendency to incriminate the witness. Section 404 allocates the burden: "Whenever the proffered evidence is claimed to be privileged under Section 940, the person claiming the privilege has the burden of showing that the proffered evidence might tend to incriminate him; and the proffered evidence is inadmissible unless it clearly appears to the court that the proffered evidence cannot possibly have a tendency to incriminate the person

claiming the privilege."[6] When the privilege has been asserted, the court determines whether its exercise is proper. "In this state, as in every other state so far as we can find, the witness is not the final judge of his right to exercise the privilege. The court must determine whether the answer might incriminate the witness. [Citations.] [¶] . . . [The witness] has the burden of showing that the testimony which was being required might be used in a prosecution to help establish his guilt." (*Cohen* v. *Superior Court* (1959) 173 Cal.App.2d 61, 68 [343 P.2d 286].)

■ In ruling on an assertion of a privilege, the court must consider the context and circumstances in which it is claimed. " 'The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence. . . . The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified, *Rogers* v. *United States,* 340 U.S. 367 [95 L.Ed. 344, 71 S.Ct. 438, 19 A.L.R.2d 378], *ante,* 344, 71 S.Ct. 438, 19 A.L.R. 2d 378 (1951), and to require him to answer if "it clearly appears to the court that he is mistaken." *Temple* v. *Commonwealth,* 75 Va. 892, 899 (1881).' " (*Cohen* v. *Superior Court, supra,* 173 Cal.App.2d 61, 70 [quoting *Hoffman* v. *United States* (1951) 341 U.S. 479, 486-487 [95 L.Ed. 1118, 1123-1125, 71 S.Ct. 814]].)

A determination that the witness may exercise the privilege must be made, therefore, after the witness has asserted the privilege. "[B]efore a claim of privilege can be sustained, the witness should be put under oath and the party calling him be permitted to begin his interrogation. Then the witness may invoke his privilege with regard to the specific question and the court is in a position to make the decision as to whether the answer might tend to incriminate the witness." (*People* v. *Harris, supra,* 93 Cal.App.3d 103, 117. See also, *People* v. *Cornejo* (1979) 92 Cal.App.3d 637, 657-658 [155 Cal.Rptr. 238].)

The comments to section 404 by the California Law Revision Commission, which cite *Cohen, supra,* 173 Cal.App.2d 61, state that section 404 was consistent with "existing law" when adopted in 1965. That section therefore contemplates that the witness has the burden to show that his testimony might incriminate him, and that the court is to rule on the claim of privilege

---

[6]Some courts have approved a procedure whereby the claim may be asserted in a pretestimonial hearing out of the presence of the jury. (*People* v. *Johnson* (1974) 39 Cal.App.3d 749, 758-760 [114 Cal.Rptr. 545]; cf. *People* v. *Chandler, supra,* 17 Cal.App.3d 798, 804-805.) We commend that approach as a means by which to avoid the potentially prejudicial impact of the witness asserting the privilege before the jury.

pursuant to *Cohen* and *Hoffman, supra,* 341 U.S. 479. (Deering's Ann. Evid. Code (1986 ed.) foll. § 404, p. 149; see also, *United States* v. *Reynolds* (1953) 345 U.S. 1, 8-9 [97 L.Ed. 727, 733-734, 73 S.Ct. 528, 32 A.L.R.2d 382].)

## III

■■ Application of these procedures in the present context—in determining whether comment is permissible—is particularly appropriate. Here, the evidence that defendant could have been expected to elicit from Cooper and Elder regarding defendant's whereabouts on April 11 would have established an alibi not only for defendant, but also for both witnesses. Assuming the truth of defendant's testimony, there is no suggestion that responding to questions designed to corroborate defendant's testimony would have had a tendency to incriminate Cooper or Elder. The same is true in most cases where alibi is the defense, whether or not the potential witness is charged with participation in the same crime,[7] since the testimony would exculpate both.

Defendant nonetheless argues that the People should not have been permitted to comment and thereby point out the obvious—that if defendant's testimony were true he could be expected to call as witnesses those persons in whose company he claimed to be at the time the burglars were apparently "casing" the Springfield Way house. He thus asks the court and prosecutor to assume that his codefendants would refuse to corroborate his testimony even if they could do so without danger of self-incrimination.

A court need not and should not assume that a logical witness would refuse to give testimony that would exculpate both the witness and the defendant, however. Nor should the court assume that, even if testifying would incriminate a witness, in all cases the witness would be unwilling to give truthful testimony that would exonerate a codefendant. Requiring that the witness actually be called even when a possibly incriminating question will be put to him recognizes the possibility that he may waive the privilege. ■■ "A witness does not become incompetent to testify merely because his testimony will incriminate him. The privilege against self-

[7] *People* v. *Bartges* (1954) 126 Cal.App.2d 763 [237 P.2d 49] is illustrative of the exceptional case in which evidence offered by the prosecution afforded a basis for concluding that the witness might incriminate himself by testifying regarding his knowledge of and association with the defendant prior to the offense. The witness had been indicted on the same charge, but his trial had been severed. In that case, however, the defendant had not testified to an exculpatory association, and he had called the witness. The witness asserted his privilege against self-incrimination which was honored on a theory that admitting the type of association with defendant that other witnesses had described could have a tendency to incriminate the witness by permitting an inference that he had aided and abetted the defendant.

incrimination is a purely personal privilege, solely for the benefit of the witness, which he may waive if he wishes. (*Rogers* v. *United States*, 340 U.S. 367, 370 [95 L.Ed. 344, 347, 71 S.Ct. 438, 19 A.L.R.2d 378]; *Steinmetz* v. *California State Board of Education*, 44 Cal.2d 816, 824 [285 P.2d 617].) Neither the state nor any other litigant is entitled to insist that the testimony of the witness be excluded if the witness himself does not claim the privilege. (*People* v. *Lewis*, 222 Cal.App.2d 136, 146 [35 Cal.Rptr. 1].) . . . [¶] . . .There is no policy of the law which would prevent a perjurer from recanting his false testimony in time to aid another, even though this course exposes the witness to some risk of further prosecution. It is not inconceivable that a witness who had committed perjury would be willing to confess it and accept the consequences rather than to see an innocent friend convicted of a robbery which he did not commit." (*People* v. *Barker* (1965) 232 Cal.App.2d 178, 181-182 [42 Cal.Rptr. 651].) The same may be said, of course, of an accomplice, or former codefendant witness.

The suggestion of the dissent that when a defendant has testified under oath to facts that a witness could be expected to corroborate without incriminating himself, it is the prosecutor who bears the burden of proving the witness would not assert the privilege against self-incrimination, and therefore is "available," turns logic on its head. The prosecutor cannot know, much less prove whether a witness would testify if asked to do so by the defendant. It is the defendant whose testimony has created the situation that makes the person a logical exculpatory witness. There is nothing unfair in requiring the defendant to bear the burden of establishing that the reason the witness was not called is that he is "unavailable" because he has exercised a privilege.

A blanket rule forbidding comment if the defendant does not do so would encourage and license perjury. The defendant would be assured that no matter how transparently perjured his testimony, there would be no burden on him to call witnesses who might be expected to corroborate it without incriminating themselves, and the prosecutor would be prohibited from commenting on his failure to call those logical witnesses. The facts of this case persuaded us that such a rule is not compelled and should not be adopted. The effort to ascertain the truth is far better served by requiring that the defendant who has offered the testimony bear the burden of establishing that the corroborating witnesses are actually "unavailable" because they hold a privilege by calling them. Then, if the privilege is claimed, its assertion can be subjected to existing procedures to determine the validity of its exercise, and the propriety of prosecutorial comment on the failure to call the witness determined objectively rather on the basis of speculation as to whether the witness is "unavailable."

We are not persuaded otherwise by the authority on which defendant relies. Comment on the failure of a defendant to call a logical witness was condemned by this court in *People* v. *Klor* (1948) 32 Cal.2d 658, 663-664 [197 P.2d 705], and the *Klor* rule applied in *People* v. *Wilkes* (1955) 44 Cal.2d 679, 687-688 [284 P.2d 481]. In relying on *Wilkes* defendant, and the dissent, overlook the reasoning of the line of cases culminating in that decision. Comment is forbidden when the comment impermissibly impinges on an assertion *by the holder* of a privilege he possesses. Although we stated in *Wilkes* that the defendant "had no power to produce his wife as a witness if she did not consent to testify" (44 Cal.2d at p. 688), that statement assumed the wife had asserted a privilege that a wife then held. *Wilkes,* itself, relied on *Klor* which condemned comment on the actual assertion of a privilege by a potential witness. In *Klor,* as in *Wilkes,* the defendant was the spouse of the witness. At the time of those trials the defendant spouse as well as the witness spouse could exercise the marital privilege. Penal Code section 1322 then provided: "Neither husband nor wife is a competent witness for or against the other in a criminal action or proceedings to which one or both are parties, except with the consent of both . . . ."

*People* v. *Terramorse* (1916) 30 Cal.App. 267, 273 [157 P. 1134], the seminal case on which *Klor, supra,* 32 Cal.2d 658, and *Wilkes, supra,* 44 Cal.2d 679, relied, explained that the impropriety of comment on the failure of the defendant's spouse to testify lay in the defendant's exercise of his privilege to exclude such testimony. "In declining to consent that [defendant's wife] should be a witness against him the defendant was standing as strictly upon *his* legal rights as he would have been had he declined to be a witness himself, and he was equally entitled to the application of the rule that his declination to permit his wife to be a witness should not in any manner prejudice him or be used against him on the trial." (See also *Thompson* v. *Hickman* (1948) 89 Cal.App.2d 356, 365-368 [200 P.2d 893]; *People* v. *Heacock* (1909) 10 Cal.App. 450, 456-457 [102 P. 543]. Accord *Griffin* v. *California* (1965) 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229] [comment on exercise of privilege against self-incrimination forbidden by Fourteenth Amendment].)

The rule of *Klor, supra,* 32 Cal.2d 658, and *Wilkes, supra,* 44 Cal.2d 679, therefore, is that comment upon exercise by the holder of a privilege impinges on that exercise and is forbidden. That rule is statutory (§ 913) and has no application unless the privilege has actually been exercised. A comment to section 913 by the 1965 California Law Revision Commission notes the reason for the limitation: "If comment could be made on the exercise of a privilege and adverse inferences drawn therefrom, a litigant would be under great pressure to forgo his claim of privilege and the protection sought to be afforded by the privilege would be largely negated.

Moreover, the inferences which might be drawn would, in many instances, be quite unwarranted." (Deering's Ann. Evid. Code (1986 ed.) foll. § 913, p. 80.) The same comment, however, emphasizes that the section is not intended to limit comment on the state of the evidence. (*Ibid.*) Here, of course, not only has there been no exercise of the privilege, but the potential witness is not a litigant. Application of section 913 in these circumstances is unwarranted.

Nor does *People* v. *Frohner* (1976) 65 Cal.App.3d 94, 108-109 [135 Cal.Rptr. 153], support defendant. In that case the witness was "unavailable" because he could not be located. The prosecutor was aware that the defendant could not obtain the testimony of the witness. In those circumstances the prosecutor may not invite the jury to speculate that the defendant's failure to call the witness reflects recognition that the testimony would not be favorable to the defense. Although the evidence might support that inference, it is improper to invite a jury to draw the inference if the jury is unaware of an equally plausible inference that the witness has not been called because he cannot be located. Here, by contrast, the defendant made no showing that Cooper and Elder could not be located or were otherwise "unavailable." An invitation by the prosecutor to speculate that the failure to call them as witnesses was because their testimony would not corroborate that of defendant was not conduct which would mislead the jury as to the reason that they were not called, and would not impinge on the exercise of a privilege by either defendant or the codefendants.

Of the out-of-state cases relied upon by defendant, only one arguably supports the blanket "unavailability" rule it enunciates. In that case, *Christensen* v. *State* (1975) 274 Md. 133 [333 A.2d 45], the Supreme Court of Maryland found prejudicial error in the court's refusal to grant defendant's request for an instruction that no unfavorable inference could be drawn from his failure to call a witness. Although it was conceded that defense counsel had done all that he could to locate a logical defense witness, the prosecution believed that the defendant had not provided full and complete information. No evidence had been presented to the trial court to support that belief, but the court denied the requested instruction. The prosecutor then commented during his closing argument that if the witness had been present at trial he might have helped in determining the truth, and questioned whether defendant had made an effort to contact the witness. The Maryland Supreme Court held that the "missing witness rule" which permitted an adverse inference was inapplicable on the facts of that case, and, in so doing, quoted 1 Wharton, Criminal Evidence (Torcia ed. 1972) section 148, page 251: "No inference arises if the person not called as a witness by the defendant is a codefendant or an accomplice not presently on trial, or

has already been convicted of the same offense as that for which the defendant is being prosecuted." (*Id.*, at pp. 139-140 [333 A.2d at pp. 48-49].)

In explaining why it adopted that rule the Maryland court reasoned that if the witness had been called and had invoked his right against self-incrimination, the defendant might be damaged. Therefore, to put the defendant to the decision of whether to call him would be "incompatible with our concept that a defendant is innocent until proven guilty beyond all reasonable doubt and that the burden of proof never shifts from the State." (*Christensen, supra,* 274 Md. at p. 140 [333 A.2d at p. 49].) As we have seen, however, it is not necessary that the witness be called before the jury. *Christensen,* therefore, is both distinguishable and unpersuasive.

The remaining cases are unhelpful. In none does the court declare, as a matter of law, that comment is never permissible if a witness who has not been called was once a codefendant. In *State* v. *Cavness* (1963) 46 Hawaii 470 [381 P.2d 685], for example, the defendant was charged with aiding and abetting a prostitute. The prosecution evidence suggested that he had acted as a lookout during her act of prostitution. Defendant denied that he had been asked to assist in that manner. She was not called to corroborate his denial of involvement. On those facts, where testimony by the witness would necessarily incriminate her, the court held that comment was improper. (*Id.,* at p. 686.) In *Morgan* v. *State* (1972) 49 Ala.App. 330 [272 So.2d 256], the defendant had offered an alibi, stating that he was in Michigan at the time a still was raided. Prosecution evidence placed Hardin at the still. Hardin had pleaded guilty, but had not been sentenced. Comment on the defendant's failure to call a witness whose offense he was accused of aiding and abetting was held to be improper because in the peculiar circumstances of that case the witness might have believed that testimony favorable to the defendant would result in imposition of a harsher sentence on the witness. The court reasoned: "Such a witness could not be supposed to be favorable," and thus could not be considered any more available to the defendant than to the state. (*Id.,* at p. 261.) *Hadley* v. *State* (1975) 165 Ind.App. 416 [332 N.E.2d 269], states no rule at all. In that case, after determining that reversible error was present because of impermissible prosecutorial comment on the defendant's failure to take the stand, the appellate court simply listed among other misconduct a comment on the defendant's failure to subpoena and present the testimony of a "codefendant." (*Id.,* at pp. 271-272.)

The logic of permitting comment or instructions in criminal cases that an adverse inference may be drawn from a party's failure to call an available witness whose testimony would naturally be expected to be favorable is recognized by our sister states and the federal courts. (See, e.g., *United*

*States* v. *Ariza-Ibarra* (1st Cir. 1981) 651 F.2d 2; *People* v. *Terry* (1981) 83 App. Div.2d 491 [445 N.Y.S.2d 340]; *State* v. *Moore* (Mo. 1981) 620 S.W.2d 370; *Commonwealth* v. *Niziolek* (1980) 380 Mass. 513 [404 N.E.2d 643].)

Comment on a defendant's failure to call a logical witness in no way undercuts the privilege against self-incrimination. In *Griffin* v. *California, supra,* 380 U.S. 609, the United States Supreme Court held that the Fifth Amendment forbids comment on a *defendant's* exercise of the privilege against self-incrimination, or instructions by the court that such silence may be considered evidence of guilt. The court did so because "comment on the refusal to testify is a remnant of the 'inquisitorial system of criminal justice' . . . which the Fifth Amendment outlaws. It is a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly." (380 U.S. at p. 614 [14 L.Ed.2d at pp. 109-110].) Manifestly, comment on a defendant's failure to call a witness has no comparable impact on the defendant.

█ We recognize that a rule permitting comment on a defendant's failure to call witnesses is subject to criticism if applied when the reason for his failure to do so is ambiguous, or if the defendant is simply standing on his right to have the state prove his guilt. Therefore, the trial court must have discretion to determine when the circumstances of the case are such that comment is not permissible. When the defendant has taken the stand, however, and offered an alibi defense in which he identifies other persons who could support his testimony, and those witnesses are available and subject to subpoena, there should be no question but that comment is appropriate and permissible.

IV

█ In holding that a witness must be called, and an assertion of the privilege against self-incrimination upheld by the trial court, as a prerequisite to deeming him unavailable, we do not intend to foreclose preargument rulings that comment is impermissible.[8] Counsel may stipulate that

---

[8] Considering the possible surprise to a defendant if the prosecution requests an instruction regarding the inference to be drawn, and the inability of the defendant to then establish his reason for failing to call a witness, the Supreme Court of New Jersey suggested a procedure that is equally suited to determining whether comment should be permitted: "The better practice . . . is for the party seeking to obtain a charge encompassing such an inference to advise the trial judge and counsel out of the presence of the jury, at the close of his opponent's case, of his intent to so request and demonstrating the names or classes of available persons not called and the reasons for the conclusion that they have superior knowledge of the facts. This would accord the party accused of nonproduction the opportunity of either calling the designated witness or demonstrating to the court by argument or proof the reason for the failure to call. Depending upon the particular circumstances thus disclosed, the trial

comment will not be permitted or defendant may satisfy the court that the witness cannot be called or that in the circumstances of the case an adverse inference should not be drawn from the failure to call a witness.

 Defendant did not seek a ruling or stipulation in this case, however, and he fails to articulate any policy which precludes comment on the state of the evidence when that evidence supports an inference that the reason a defendant has failed to call a witness to corroborate his testimony is that the testimony is perjured. Comment is permissible if the witness is not a codefendant. A rule that forbids comment on grounds that the witness must be "deemed" to be unavailable, arguably would limit the right of the People to use relevant evidence. The right of the prosecutor to comment "is in substance a rule of evidence that allows the State the privilege of tendering to the jury for its consideration the failure of the accused to testify." (*Griffin* v. *California, supra,* 380 U.S. 609, 613 [14 L.Ed.2d 106, 109].) The failure of a defendant to call an available witness whom he could be expected to call if that witness testimony would be favorable is itself relevant evidence. The omission traditionally has been considered an admission by conduct—an admission that the witness's testimony would not be favorable. (McCormick, Evidence (Lawyer's ed. 1984) § 272, p. 804; 2 Wigmore, Evidence (Chadbourn ed. 1979) § 285 et seq., p. 192 et seq.; Comment, *Drawing an Inference from the Failure to Produce a Knowledgeable Witness: Evidentiary and Constitutional Considerations* (1973) 61 Cal.L.Rev. 1422.)

The Legislature and the electorate of this state have acted in a manner which clearly reflects a policy that such comment be permitted. Article I, section 28, subdivision (d), of the California Constitution, adopted in 1982, commands: "Except as provided by statute . . . relevant evidence shall not be excluded in any criminal proceeding . . . ." An inference that defendant's testimony was perjured flows from his failure to call Cooper and Elder since they were not shown to be unavailable. If considered an admission by conduct, that failure is substantive evidence that may not be excluded. When *Griffin, supra,* 380 U.S. 609, was decided the California Constitution (art. I, former § 13) expressly permitted comment by the court and counsel on a defendant's "failure to explain or to deny by his testimony any evidence or facts in the case against him." That provision was repealed after *Griffin* forbad such comment on a defendant's failure to testify. No change has been made, however, in California Constitution, article VI, section 10, which permits comment on the evidence by the court or in section 913 which prohibits comment only on the actual exercise of a privilege not to testify.

court may determine that the failure to call the witness raised no inference, or an unfavorable one, and hence whether any reference in the summation or a charge is warranted." (*State* v. *Clawans* (1962) 38 N.J. 162-172 [183 A.2d 77, 82].)

We noted in *People* v. *Rodriguez* (1986) 42 Cal.3d 730, 768 [726 P.2d 113], that fair commentary on the state of the evidence by the trial judge is permitted by both the state and federal Constitutions, emphasizing there that a judicial power expressly granted by our state Constitution cannot violate other rights established by that charter. The propriety of such comment is well established. (*Id.,* at pp. 765-766. See also, *People* v. *Hardy* (1969) 271 Cal.App.2d 322, 330-331 [76 Cal.Rptr. 557], and cases cited.) Since comment by the court is permissible, we see no justification for prohibiting comment by the prosecutor.

Neither principle nor precedent supports the rule which defendant and the dissent seek to establish. Their rule would create a judicial presumption that an entire class of potential witnesses is "unavailable" and comment on their absence would be prohibited solely because the potential witnesses have been charged with the same offense as the defendant. The presumption would apply regardless of whether the testimony that could logically be expected from the "unavailable" witness would be incriminating to the witness, and regardless of the actual willingness of the witness to testify. We decline the opportunity to engage in such judicial rulemaking.

 The prosecutor's invitation to the jury in this case to infer that the reason defendant failed to call Cooper and Elder was that their testimony would not support his alibi did not impinge on the exercise of a privilege and did not mislead the jury as to the reason for their absence. Because comment inviting the jury to draw a logical inference based on the state of the evidence, including comment on the failure to call available witnesses, is permissible except as limited by section 913 and *Griffin* v. *California, supra,* 380 U.S. 609 (*People* v. *Szeto* (1981) 29 Cal.3d 20, 34 [171 Cal.Rptr. 652, 623 P.2d 213]; *People* v. *Vargas* (1973) 9 Cal.3d 470, 475 [108 Cal.Rptr. 15, 509 P.2d 959]), the comment did not constitute misconduct.

The judgment of the Court of Appeal is affirmed.

Lucas, C. J., Mosk, J., Panelli, J., and Arguelles, J., concurred.

**BROUSSARD, J.**—I dissent. I disagree with the majority's conclusion that Ford's codefendants were "available" and that the prosecutor's comment on Ford's failure to call them as witnesses was proper. The prosecutor's comment implied that defendant could have compelled his codefendants to testify and that the reason he failed to call them as his witnesses is that he knew they would refute his alibi. But Ford could *not* have compelled his codefendants' testimony and the prosecutor's implication to the contrary was misleading and unfair. The trial court properly granted defendant's

motion for new trial on the ground that "the prosecutor's comment on the failure of defendant Ford's codefendants to testify was improper and prejudicial, in that Eric Ford's codefendants were not available to testify at this trial due to the strong likelihood that they would have correctly asserted their Fifth Amendment privilege not to testify, and that the unavailability of the codefendants was known to the prosecutor, making an advance showing unnecessary." Since the majority offer no reason to interfere with the trial court's correct application of the law and considered exercise of discretion, we should sustain the trial court's ruling.

## DISCUSSION

When material evidence is not produced during the course of a trial, an adverse inference may be raised against the party who would have been expected to produce it if it had been favorable to him or her. (*Graves* v. *United States* (1893) 150 U.S. 118, 121 [37 L.Ed.1021, 1023, 14 S.Ct. 40]; *Kean* v. *Commissioner of Internal Revenue* (9th Cir. 1972) 469 F.2d 1183, 1187-1188; *People* v. *Coleman* (1969) 71 Cal.2d 1159, 1167 [80 Cal.Rptr. 920, 459 P.2d 248].) The inference, which may be argued to the jury, is that the party who failed to produce the evidence did so because he or she knew it was damaging. The rationale behind this rule is that a party in an adversarial proceeding is naturally motivated to produce any favorable evidence he or she possesses. (2 Wigmore, Evidence (Chadbourn ed. 1979) § 286, pp. 199-200.) Given the variety of reasons that might motivate a party to decide not to present evidence, the rule is applied only when certain conditions have been met.[1]

In this case, the propriety of the prosecutor's comment depends upon whether or not Cooper and Elder, Ford's codefendants, were available to testify. (See *Graves* v. *United States, supra,* 150 U.S. at p.121 [37 L.Ed. at p. 1023]; *Forsberg* v. *United States* (9th Cir. 1965) 351 F.2d 242, 249; *People* v. *Coleman, supra,* 71 Cal.2d at p. 1167; see also 2 Wigmore, Evidence, *supra,* § 287, p. 202.) The majority conclude that they were available to testify because both were subject to subpoena. They further conclude that the codefendants were not rendered unavailable by their present right to assert the privilege against self-incrimination since Ford did not call them as

---

[1] As one commentator noted, "[a] person's failure to produce evidence is ambiguous; a variety of considerations unrelated to guilt might motivate him not to put a particular witness on the stand. He may fear that the witness he calls will be impeached because of a criminal record, that the person's appearance or mannerisms will adversely impress the jury, or that the potential witness is just too unpredictable or untrustworthy to call." (Comment, *Drawing an Inference from the Failure to Produce a Knowledgeable Witness: Evidentiary and Constitutional Considerations* (1973) 61 Cal.L.Rev. 1422, 1427; see also *United States* v. *Busic* (3d Cir. 1978) 587 F.2d 577, 586.)

witnesses in order to compel them to expressly assert the privilege and thereby establish their unavailability.

The majority's approach is flawed in several respects. First, it departs from the cases defining a witness as "unavailable" if the defendant has no power to compel the witness's testimony. Second, it requires the defendant to anticipate the prosecutor's comment and to seek a prior ruling on its impropriety. Finally, it compels a result contrary to that reached by the trial court after a considered exercise of discretion.

The crucial inquiry in determining the availability of witnesses in this context is whether or not the party against whom the inference is drawn can compel the witness's testimony. In *People* v. *Coleman, supra,* 71 Cal.2d at p. 1167, for example, this court noted that "[b]efore the enactment of the Evidence Code it was misconduct for the prosecuting attorney to comment on the failure of a defendant's spouse to testify for the defendant. (*People* v. *Wilkes* (1955) 44 Cal.2d 679, 687 [284 P.2d 481], and cases cited.) At that time, however, neither spouse could testify for or against the other without the consent of both. (Code Civ. Proc., § 1881, subd. 1; Pen. Code, § 1322; both repealed effective Jan. 1, 1967.) Accordingly, it was improper to comment on the defendant's spouse's failure to testify, for the defendant *could not compel his spouse to testify* either for or against him." (Italics added.)

In a similar case involving the former spousal privilege, the court emphasized that the prejudicial effect of the prosecutor's comment was compounded by the trial court's instruction effectively informing the jury that it should disbelieve the defendant since he did not call his wife to corroborate his testimony. (*Wilkes, supra,* 44 Cal.2d at p. 688.) The court noted that "[c]ontrary to the effect of the trial court's instructions, [defendant] *had no power to produce* his wife as a witness if she did not consent to testify." (*Ibid.,* italics added.) Neither *Coleman, supra,* 71 Cal.2d 1159, nor *Wilkes, supra,* 44 Cal.2d 679, required the defendant to subpoena the witness and to perform the ritual of having her claim the privilege.[2]

The prosecutor's speculation about the motives underlying Ford's failure to call his codefendants necessarily implied that Ford could have compelled

---

[2]The majority misstate the holding in *Wilkes* and analogous cases. They assert that the guiding principle in these cases is that comment on *defendant's* exercise of his privilege is forbidden. This interpretation is only half right and ignores the dual nature of the former spousal privilege. Under former Penal Code section 1322, a defendant's spouse could assert her privilege not to testify for or against the defendant, and the defendant could assert his privilege to prevent his spouse from testifying for or against him. Accordingly, in this context, there are two reasons for prohibiting comment. Comment is improper both because it implicates the holder's exercise of his privilege and because it inaccurately implies that he could compel his spouse's testimony.

their testimony, and the jury was likely to so conclude. However, Ford could *not* have compelled the testimony of his codefendants and to imply otherwise was misleading. It is undisputed that both Cooper and Elder were in a position to assert the privilege against self-incrimination. At the time of defendant's trial, both had been charged with the same crime for which defendant was being tried but neither had been sentenced. Under the California Constitution, an accused does not lose his privilege against self-incrimination until he has been sentenced. (Cal. Const., art. I, § 15; *People* v. *Kizzee* (1979) 94 Cal.App.3d 927, 938 [156 Cal.Rptr. 784].)

Nevertheless, the majority conclude that there is no reason to believe that the testimony of Cooper or Elder would have incriminated them or that the court would have sustained their claim of privilege if they had asserted it. Either Ford was lying, the majority argue, or Cooper and Elder would have simply corroborated his testimony concerning their innocent activities on the day before the crime. This "either-or" approach is misleading and distorts the applicable legal standard. The trial court must sustain a claim of privilege "unless it clearly appears to the court that the proffered evidence *cannot possibly have a tendency* to incriminate the person claiming the privilege." (Evid. Code, § 404, italics added.) This determination involves an assessment of the relationship between the witness's potential testimony and his legal status. Speculation about whether or not defendant was telling the truth does not enter into this determination.

Cooper and Elder were logical witnesses to corroborate defendant's alibi. However, they were also charged with the same crime for which defendant was being tried. There is no question that their testimony concerning the events on the day of the burglary and the day before could "possibly have a tendency to incriminate [them]." (*Ibid.*) The trial court properly determined that they could have correctly asserted their Fifth Amendment privilege not to testify.

The trial court further concluded that the prosecutor knew Ford's codefendants were unavailable and that an advance showing was unnecessary. The majority, however, would require defendant to anticipate that the prosecutor intends to comment on the missing codefendants and either call them as witnesses to establish their unavailability or seek an anticipatory ruling on the issue. Because Ford failed to take either precaution, the majority deem his codefendants available. I can think of no other circumstance in which a party's objection to his opponent's argument is automatically overruled because the objector did not seek to preclude the comment

before it was made. The majority provide no authority to support this illogical and unjust approach.[3]

The majority observe that a witness bears the burden of showing that he is entitled to claim a testimonial privilege (Evid. Code, § 404), but that has no bearing on this case. The codefendants were not called as witnesses and did not claim entitlement to a privilege. The question is which *party* has the burden of showing whether or not the witnesses are available. The obvious answer is that the party who wants to make use of the fact ought to prove it. If the prosecutor wants to argue that defendant could have called his codefendants as witnesses, she should prove that they would have been available to testify.[4]

Furthermore, even assuming defendant should have established the unavailability of his codefendants prior to the prosecutor's comment, there is no reason to believe that the trial court would have ruled any differently on the propriety of the inference in the context of a preargument motion than it did in the context of a motion for new trial. Both parties fully briefed the issue in connection with defendant's motion for a new trial. After considering their respective arguments, the trial court found the prosecutor's argument inappropriate.

Ford seeks application of the general rule that codefendants must be considered unavailable for the purposes of precluding prosecutorial argument on the defendant's failure to call them as witnesses.[5] In their zeal to reject the general rule, the majority fail to acknowledge the trial court's determination that, *on these facts,* the prosecutor's argument was improper

---

[3] Those cases which suggest that a ruling on the question of availability be sought prior to a comment or instruction raising an adverse inference charge the party seeking to raise the inference with the burden of notifying the court of its intention to do so. (*State* v. *Clawans* (1962) 38 N.J. 162, 172 [183 A.2d 77, 82.]; *Gass* v. *United States* (1969) 416 F.2d 767, 775 [135 App.D.C. 11]; *United States* v. *Blakemore* (6th Cir. 1973) 489 F.2d 193, 196.)

[4] Herein lies the essential difference between our position and that of the majority. The majority assert that because the prosecution could not predict whether Ford's codefendants would testify, it is entitled to rely on the utterly untenable assumption that codefendants who stood the risk of self-incrimination nevertheless would have testified. By testifying, the majority contends, defendant assumed the burden of establishing that his codefendants' would not have testified in order to prevent the prosecution from arguing to the contrary. It is more logical to assume that codefendants who are charged with the same crime as that for which defendant is being tried are not likely to testify. The party who seeks to argue otherwise should bear the burden of refuting this assumption by establishing the facts upon which its argument rests.

[5] The rule is followed in several other states. (*State* v. *Cavness* (1963) 46 Hawaii 470 [381 P.2d 685, 686]; *Morgan* v. *State* (1972) 49 Ala.App. 330 [272 So.2d 256, 259-261]; *Christensen* v. *State* (1974) 274 Md. 133, 139-140 [333 A.2d 45]; *Hadley* v. *State* (1975) 165 Ind.App. 416 [332 N.E.2d 269, 272]; see also 29 Am.Jur.2d, Evidence, § 181 at p. 228; Gershman, Prosecutorial Misconduct (1986) § 10.3(b), pp. 10-24.).

and prejudicial, and necessitated a new trial. "The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears, and the order will be affirmed if it may be sustained on any ground, although the reviewing court might have ruled differently in the first instance. [Citation.]" (*Shaw* v. *Pacific Greyhound Lines* (1958) 50 Cal.2d 153, 159 [323 P.2d 391]; see also *People* v. *Robarge* (1953) 41 Cal.2d 628, 633 [262 P.2d 14]; *People* v. *Roubus* (1966) 65 Cal.2d 218, 220-221 [53 Cal.Rptr. 281, 417 P.2d 865]; *People* v. *Montgomery* (1976) 61 Cal.App.3d 718, 728-729 [132 Cal.Rptr. 558]; *People* v. *Cartwright* (1979) 98 Cal.App.3d 369, 381 [159 Cal.Rptr. 543].) The majority do not identify any flaw in the court's considered exercise of discretion, nor do they offer any justification for replacing it with their own.

As established, the trial court's determination that Cooper and Elder could have properly refused to testify is supported by law and logic. Equally reasonable is its determination that Ford did not call his codefendants as witnesses because he believed they would not have testified. The trial court was well within its province to sustain defendant's objection to the prosecutor's comment suggesting that defendant's motives were to conceal unfavorable testimony.

The trial court also acted within its discretion when it determined that its admonition was not adequate to repair the harm caused by the prosecutor's misleading comment. This was not a case in which evidence of guilt was overwhelming. The testimony of two important prosecution witnesses was compromised because of erroneous descriptions of the defendant's race and clothing, and the jury had difficulty reaching a verdict.

Shirley Williams testified that she could not identify defendant as the White man she saw on the day of the burglary because she had not seen his face. But she recalled that he was wearing the same clothing when she first saw him at the scene as when he was arrested directly afterward. She stated that he was wearing a white T-shirt and Levi's. However, a photograph taken by the police following his arrest shows defendant wearing a black coat, blue pants and a dark blue sweatshirt.

Patricia Blair testified that she observed a White man and a Black man leaving the yard of the burglarized home. However, on the day of the crime, she told the officer that she saw a Mexican man and a large Black man emerge from the yard. The officer's written report confirms this version.

The jury, after hearing all the evidence and deliberating over two hours, was divided evenly and was unable to reach a consensus. It requested that

Blair's and Williams's identification testimony be read to them, as well as Officer Carlson's testimony concerning his initial contact with the defendant and defendant's testimony covering the time he left Cooper's house until he was arrested. The trial court's conclusion that the prosecutor's comment prejudicially misled the jury was reasonable.

Though the majority reject the general rule that comment on defendant's failure to call his codefendants as witnesses is improper, they do not conclude that such comment is always proper as a matter of law. Indeed, they acknowledge that the trial court must have discretion to determine when the circumstances of the case are such that comment is not permissible. (Maj. opn., *ante,* at p. 446.) They completely fail, however, to identify the manner in which the trial court abused its broad discretionary powers in this case.

I would reverse the judgment of the Court of Appeal.

**KAUFMAN, J.,** Dissenting.—Sadly, the majority misconceives the issues in this case and its misconception has led it to an erroneous conclusion. The issue *is not* whether the codefendants properly exercised their privileges against self-incrimination, but whether defendant could compel their testimony and whether the trial court abused its discretion in granting a new trial because of the prosecutor's grossly unfair comment on defendant's failure to call the codefendants as witnesses when the defendant could not compel their testimony and the prosecutor had equal ability to call them as witnesses.

With respect to the true issues the dissenting opinion by Justice Broussard is irrefutably correct and I fully endorse the analysis and reasoning therein set forth.

Respondent's petition for a rehearing was denied June 30, 1988. Broussard, J., and Kaufman, J., were of the opinion that the petition should be granted.