**Edward A. CLUM, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–5214.

Court of Appeals of Alaska.

April 28, 1995.

Daniel C. Wayne, Juneau, for appellant.

Thomas E. Wagner, Asst. Dist. Atty., Richard Svobodny, Dist. Atty., and Bruce M. Botelho, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

MANNHEIMER, Judge.

Edward A. Clum appeals his conviction for driving while intoxicated, AS 28.35.030(a). We reverse Clum's conviction because the prosecutor engaged in improper argument to the jury.

Shortly after midnight on the morning of May 5, 1993, Juneau Police Officer Jerry Nankervis saw Clum driving erratically. Clum twice drove his jeep across the fog line at the right-hand edge of the road; Clum also drifted in and out of the center turn lane, braking suddenly when his car entered the center lane. Based on these observations, Nankervis stopped Clum's vehicle.

When Clum got out of his jeep, Nankervis observed that Clum appeared intoxicated: he had a strong odor of alcoholic beverages, his eyes were bloodshot, his speech was slurred, and he swayed as he walked. Nankervis

asked Clum to perform several field sobriety tests, which Clum either failed or was unable to perform. Nankervis also testified that, when he initially asked Clum for his name, Clum told the officer that his name was "Joe", only later admitting that his first name was really "Ed". Nankervis concluded from all these observations that Clum was intoxicated, and he arrested him.

Clum did not testify at his trial. However, Clum called Mike Miller, his employer, to testify concerning Clum's level of sobriety when he was arrested. Miller had not witnessed any of the events described in the last paragraph, but Miller asserted that he could ascertain Clum's level of sobriety by listening to Clum's voice. Before Miller testified, defense investigator David Hays played an audio tape for him. This recording, according to Hays, was a copy of approximately twenty minutes of the original tape recording that the police made when Clum was brought to the police station for breath testing and other DWI processing. Hays testified that he played about two or three minutes of this copy for Miller. When Miller took the stand, he asserted that, from listening to this segment of the tape, he could tell that Clum had not been intoxicated at the police station.

The prosecutor did not comment on Miller's testimony or the taped interview in his initial summation to the jury, and Clum's attorney did not mention these topics in his closing argument. However, in his rebuttal summation, the prosecutor told the jury:

Let me use a different word; then maybe I won't give that connotation. Something odd about Mr. Miller's testimony. And what is it? What time did you [the jury] get in here this morning? Nine o'clock. And when you came in here, what did you see? A proposed witness list. Who's on that proposed witness list? Mike Miller. When did Mike Miller hear this tape? Around eleven o'clock today. He knew what he was going to say before he heard the tape. He's on [the list], he's a proposed witness before he ever hears the tape. Now, why? Well, you know, I don't know. I suspect none of us will ever know. But Mr. Miller does tell us that his job, his work, will be affected by the outcome of this trial [because Clum was Miller's employee]. And maybe that's why, in listening to two minutes, or four minutes, of a twenty-minute tape, that he came up with the observation he did. You should also ask yourself, "Why did he only listen to two minutes, or four minutes? Who chose those four minutes that he listened to? Were they amended? Were they at the end of the tape, or the beginning of the tape?" Officer Nankervis told you he was with the defendant for about two hours. Was the [defense investigator's] tape [excerpted from] when [Nankervis] first contacted the de-

> I want to talk a little bit about Mr. Miller. Mr. Miller says, "The defendant didn't sound to me like he was under the influence, on [the] two minutes out of the tape that I heard." I don't want to suggest to you that there was a problem with the tape he heard; you heard how it was done. I don't want to suggest to you that it wasn't done on May 5th, that it was done by somebody other than Officer Nankervis. The defense could have tied all those things up if they wanted to. You see, Officer Nankervis is still sitting here. They could have called him as a witness and said, "Hey, listen. Did you make a tape recording? Did you provide it to the district attor-

ney's office?" They chose not to do that. You'll have to figure out why they chose not to do that, but maybe it suggests that there was something a little fishy about what went on.

At this point, Clum's attorney interposed: "I have to object, Your Honor. He knows why we didn't call Officer Nankervis. And it has nothing to do with being fishy." Judge Froehlich responded: "I'm going to overrule the objection. It's merely a suggestion, and again, it's what the jury makes of the evidence that matters here. The attorneys can make suggestions or submit proposals as to how [the jury] should do that, but it's what the jury thinks of the evidence that counts."

After Judge Froehlich overruled the defense attorney's objection, the prosecutor continued:

fendant, or was it made at the end of the two hours? Would ... the passage of time affect whether somebody was intoxicated, whether they became less so, or that his speech got better, after two hours? They could have called Officer Nankervis and asked those questions. They chose not to do that. Since they knew, at nine in the morning, ...

Clum's attorney then interrupted: "Your Honor, I object again. The reason we [did not call] Mr. Nankervis has nothing to do with that—[the prosecutor] know[s] that." Judge Froehlich declared: "I'm going to overrule the objection to the argument here, and again remind the jury [that] it's only argument, not evidence."

The problem here is that the prosecutor's argument, although only argument, improperly commented on Clum's failure to call Officer Nankervis—a witness peculiarly associated with the State. The prosecutor asked the jury to infer, from Clum's failure to call Nankervis, that the defense investigator's tape had been doctored—that either Clum or his investigator was perpetrating a fraud on the court.

It is true that the prosecutor prefaced his remarks by telling the jury, "I don't want to suggest to you that there was a problem with the tape [Miller] heard[.] I don't want to suggest to you that [the tape] wasn't [from the morning of Clum's arrest, or] that it was [made] by somebody other than Officer Nankervis." However, immediately after making this disclaimer, the prosecutor asked the jury to draw precisely that inference:

[But] the defense could have tied all those things up if they wanted to. You see, Officer Nankervis is still sitting here. They could have called him as a witness and said, "Hey, listen. Did you make a tape recording? Did you provide it to the district attorney's office?" They chose not to do that. You'll have to figure out why they chose not to do that, but maybe it

suggests that there was something a little fishy about what went on.

When Clum's attorney objected, the trial judge overruled the objection; he told the jurors that the prosecutor was engaging in permissible argument, and that they could consider the prosecutor's suggestions for whatever value they might have. Given this invitation, the prosecutor returned to his theme:

Let me use a different word; then maybe I won't give that connotation. [There is] something odd about Mr. Miller's testimony. And what is it? ... You should also ask yourself, "Why did [Miller] only listen to ... four minutes? Who chose those four minutes that he listened to? *Were they amended?* Were they at the end of the tape, or the beginning of the tape?" ... They could have called Officer Nankervis and asked those questions. They chose not to do that.

(emphasis added) Again, when Clum's attorney objected, the trial judge told the jury that the prosecutor's argument was proper.

Thus, the prosecutor asked the jury to draw the very inference that he disavowed; the inference that the tape was suspect and unreliable. When the prosecutor's disclaimer is evaluated in light of the argument that followed, it proves as misleading as Marc Antony's protestation that he had come to bury Caesar, not to praise him.[1] The prosecutor clearly asked the jury to infer, from the fact that Clum had not called Nankervis to authenticate the tape, that the tape played for Miller had been altered.

In *Lewis v. State,* 862 P.2d 181, 190–91 (Alaska App.1993), this court surveyed the law governing a prosecutor's power to ask the jury to draw an adverse inference from the fact that the defendant has failed to call a particular witness. As the supreme court noted in *McCurry v. State,* 538 P.2d 100, 104 (Alaska 1975), *overruled on other grounds by*

---

1. In William Shakespeare's *Julius Caesar,* Act III, Scene 2, the conspirators who have assassinated Caesar and who now rule Rome allow Marc Antony to speak at Caesar's funeral, even though Antony was Caesar's friend and supporter. Antony's funeral oration begins, "Friends, Romans, countrymen—lend me your ears! I

come to bury Caesar, not to praise him." Antony then proceeds to recite and extol Caesar's personal, civic, and military virtues—all the while protesting that he means no disrespect to the "honorable men" who assassinated Caesar. Antony's words incite the multitude to revolt against the conspirators.

*Howe v. State,* 589 P.2d 421 (Alaska 1979), most courts allow such comment when the absent witness was particularly within the control of the defendant. Some courts, responding to commentators' criticism · of this traditional rule, allow comment on the defendant's failure to call any witness who was available and whose testimony "would naturally be expected to be favorable to the defendant". *People v. Ford,* 45 Cal.3d 431, 247 Cal.Rptr. 121, 754 P.2d 168, 178 (Cal.1988), and other cases cited in *Lewis,* 862 P.2d at 190.

However, under either the traditional approach to this subject or the more liberal rule now followed by some courts, the prosecutor's argument in Clum's case was impermissible. Officer Nankervis was the officer who arrested Clum; he clearly was associated with the government, not the defense. He was not under Clum's peculiar control. Nor had the defense made any factual assertion that would lead one to infer that Nankervis's testimony could be expected to be favorable to the defense.

On appeal, the State argues that the prosecutor could lawfully comment on the fact that the defense had neither offered the tape into evidence nor played the tape in court so that the jury might hear the portion Miller was testifying about. The State further argues that the prosecutor could lawfully comment on the possibility that the four minutes Miller heard might have been carefully selected to mask the intoxication that Clum demonstrated on the rest of the tape. We agree with the State that these arguments were legitimately available to the prosecutor. However, the State's suggested arguments could have been made without asking the jury to draw any inference from the fact that Clum failed to call Nankervis. The problem here is that the prosecutor made a different, impermissible argument.

Under the circumstances of this case, the trial judge erred when he failed to sustain Clum's objection to the prosecutor's argument. When Clum made his objection, the judge should have instructed the jury that Clum was under no obligation to call Nankervis and that the jurors were to draw no adverse inference from the fact that Clum had failed to call Nankervis. Because we can not say that this error was harmless, Clum is entitled to a new trial.

The judgement of the district court is REVERSED.