Filed 4/29/25  P. v. Ball CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TILDEN JORDAN BALL,<br><br>    Defendant and Appellant. | H050308<br>(Santa Cruz County<br> Super. Ct. No. 21CR05577) |

A jury found Tilden Jordan Ball guilty of aggravated mayhem, kidnapping, second degree robbery, and assault with a firearm.  The jury further found Ball personally and intentionally discharged a firearm, causing great bodily injury in the commission of the first three offenses.  The trial court found Ball had suffered a prior serious or violent felony conviction.  The court imposed an aggregate sentence of life consecutive to 22 years in prison.

At trial, the prosecution called three witnesses who invoked the privilege against self-incrimination under the Fifth Amendment, and the trial court sustained the invocations.  As to each of the three witnesses, the prosecution declined to petition the court for a grant of immunity from prosecution, and none of the three witnesses testified.

At the close of evidence, Ball's trial counsel requested a jury instruction stating that the power to petition the court to grant a witness immunity from prosecution arising out of their testimony at trial lies solely with the District Attorney.  The trial court denied the request.

Ball contends the trial court erred in denying his request for a pinpoint instruction. He argues the denial prevented him from commenting on the prosecution's failure to present testimony from witnesses the prosecution would be expected to present if the prosecution's case was reliable. Ball asserts this violated his state law and federal constitutional rights to present a defense and rebut the prosecution's evidence against him. For the reasons below, we conclude this claim is without merit.

Ball further contends the evidence was insufficient to prove his prior conviction for assault in 2012 constituted a serious or violent felony. We conclude this claim is also without merit.

Accordingly, we will affirm the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Procedural Background

The prosecution charged Ball with five counts: count 1—aggravated mayhem (Pen. Code, § 205)[1]; count 2—kidnapping (§ 207, subd. (a)); count 3—second degree robbery (§ 211); count 4—assault with a firearm (§ 245, subd. (a)(2)); and count 5—possession of a firearm by a felon (§ 29800, subd. (a)(1)). As to counts 1 through 4, the prosecution alleged Ball personally and intentionally discharged a firearm, causing great bodily injury. (§ 12022.53, subd. (d).) As to counts 1, 2, and 3, the prosecution alleged Ball personally used a firearm. (§ 12022.53, subd. (b).) The prosecution further alleged Ball had suffered a prior serious felony conviction (§ 667, subd. (a)(1)) and a prior serious or violent felony conviction (§ 667, subds. (b)-(i)).

A jury found Ball guilty as charged on counts 1 through 4 and found the firearm enhancements true. The jury did not reach a verdict on count 5. The trial court found the prior conviction allegations true, and the court granted the prosecution's motion to dismiss count 5.

---

[1] Subsequent undesignated statutory references are to the Penal Code.

The court sentenced Ball to an aggregate term of life consecutive to 22 years in prison. The term consisted of a life term on count 1, 10 years on count 2 (the midterm of five years, doubled for the strike prior), 2 years on count 4 (one-third of double the three-year midterm), and 10 years for the firearm enhancement on count 2 under section 12022.53, subdivision (b). The court stayed all remaining terms.

## B. Facts of the Offenses

The prosecution alleged Ball shot Jacob C. (Jacob) in the genitals after a mutual friend, Angeline C. (Angeline), told Ball that Jacob had sexual assaulted her.

In October 2021, Jacob, Angeline, and other friends were staying at various hotel rooms in Santa Cruz and Monterey, where they used heroin and methamphetamine. They met up with Ball and another friend at a hotel in Monterey. At one point, Ball told Jacob that Ball needed to rescue a dog and he told Jacob to help him. They took Angeline's car and drove toward Watsonville. While in the car, Ball showed Jacob a gun and told him how he had used the gun to shoot someone who had sexually assaulted a woman.

At some point, they arrived at a property unfamiliar to Jacob. It was dark, and Ball told Jacob they were not really there to rescue a dog. Instead, Ball said they were going to figure out what had happened the previous night. Ball stated that he had reason to believe something had happened between Jacob and Angeline. Ball pointed a gun at Jacob and threatened to kill him and bury him on the property.

The property belonged to Daniel Mastin, who was present when Ball and Jacob arrived. They went into a trailer on the property and called Angeline on the phone. During the call, Mastin and his girlfriend, Maryah Powers, were outside. Angeline told Ball that Jacob had touched her while she was sleeping. Ball then "flipped out, hung up the phone, grabbed [Jacob] by the back of the shirt, pulled [Jacob] outside and made [Jacob] get in the passenger's seat of the vehicle."

Ball drove the car down a dirt road, pulled over, and told Jacob to get out of the car and strip down to his boxers. Jacob became hysterical and Ball struck him on the

head.  They then got back in the car and started driving again.  During the drive, Ball spoke to Jacob about making him cut one of his fingers off.  Eventually they stopped and Ball let Jacob get out of the car.  As Jacob tried to get his things from the car, Ball got out of the car and shot Jacob.  Ball then drove away.

Jacob did not feel pain at first, but later he felt "a burning sensation in [his] privates" and there was "warm liquid and blood everywhere."  He screamed for help, the police were called, and he went to the hospital.

In the ambulance, a police officer asked Jacob if he had shot himself or been forced to shoot himself.  Jacob said that he did not shoot himself, but would not say who shot him.  At the hospital, however, Jacob identified his shooter first as "T.J." and then as Ball.

## II.    DISCUSSION

### A. *Denial of Request for Jury Instruction on the Power to Grant Immunity*

At trial, the prosecution called Angeline, Mastin, and Powers to the stand, but each witness invoked their Fifth Amendment right not to testify, and the prosecution declined to seek immunity for any of them.  Ball contends the trial court erred by denying his request to instruct the jury that the power to petition for a grant of immunity to a witness lies solely with the prosecution.  He argues he had the right to present argument on the prosecution's failure to present testimony from these witnesses, and that the denial of his request for the immunity instruction prevented him from making such an argument.  Ball asserts this violated his state and federal rights to present a defense and rebut the prosecution's case.  The Attorney General contends the trial court properly denied the requested instruction because it was unlawful.

### 1. *Legal Principles*

Pinpoint "instructions relate particular facts to a legal issue in the case or 'pinpoint' the crux of a defendant's case, such as mistaken identification or alibi. [Citation.]  They are required to be given upon request when there is evidence supportive

4

of the theory, but they are not required to be given sua sponte." (*People v. Saille* (1991) 54 Cal.3d 1103, 1119.)  Further, " 'a trial court need not give a pinpoint instruction if it is argumentative [citation], merely duplicates other instructions [citation], or is not supported by substantial evidence [citation].' [Citations.]" (*People v. Hartsch* (2010) 49 Cal.4th 472, 500.)  "Instructions that highlight specific evidence, or invite the jury to draw inferences favorable to one side, are considered argumentative and generally should not be given.  [Citations.]" (*People v. Bell* (2019) 7 Cal.5th 70, 107.)

We apply the independent or de novo standard of review in assessing whether instructions correctly state the law.  (*People v. Posey* (2004) 32 Cal.4th 193, 218.)  In some instances, the California Supreme Court has applied the abuse of discretion standard to the denial of a request for a pinpoint instruction.  (See *People v. Mora and Rangel* (2018) 5 Cal.5th 442, 497; *People v. Gonzales* (2012) 54 Cal.4th 1234, 1297.)[2]

Evidence Code section 913 provides:  "(a) If in the instant proceeding or on a prior occasion a privilege is or was exercised not to testify with respect to any matter, or to refuse to disclose or to prevent another from disclosing any matter, neither the presiding officer nor counsel may comment thereon, no presumption shall arise because of the exercise of the privilege, and the trier of fact may not draw any inference therefrom as to the credibility of the witness or as to any matter at issue in the proceeding.  [¶]  (b) The court, at the request of a party who may be adversely affected because an unfavorable inference may be drawn by the jury because a privilege has been exercised, shall instruct the jury that no presumption arises because of the exercise of the privilege and that the jury may not draw any inference therefrom as to the credibility of the witness or as to any matter at issue in the proceeding."

---

[2] Ultimately, we need not decide which standard of review to apply here because we conclude for the reasons below that even under the de novo standard, this claim is without merit.

5

## 2. *Procedural Background*

Prior to trial, the prosecution subpoenaed Angeline, Mastin, and Powers to appear at trial, and all three appeared. The trial court appointed counsel to represent each witness.

During its case in chief, the prosecution called each of the three witnesses to the stand outside the presence of the jury. First, the prosecution called Angeline to the stand and began questioning her about the case. In response to several questions, Angeline invoked her Fifth Amendment right not to answer, citing the advice of her counsel. The trial court sustained the exercise of privilege and found Angeline to be an unavailable witness under the Fifth Amendment. With the agreement of both parties, the court released her.

The next day, the prosecution called Mastin to the stand. In response to three questions, Mastin asserted his Fifth Amendment right not to respond, citing the advice of his counsel. The trial court sustained the exercise of privilege and asked whether the prosecution intended to seek immunity for Mastin. The prosecutor responded, "No," and the court released Mastin. Defense counsel did not object.

The prosecutor then stated that he had emailed the court with a proposal to instruct the jury on the issue of witnesses who invoked their privilege against self-incrimination. The court noted that defense counsel had responded by e-mail, and that counsel had no objection. The prosecutor presented the court and the defense with a copy of CALCRIM No. 320.[3] The court acknowledged the pattern instruction and responded, "So what we're going to do, we can go ahead [and] do this in connection with the assertion that the traditional code section that indicates that you're not, or, [defense counsel], on behalf of Mr. Ball, would not be required to call all witnesses." The court then instructed the parties to submit the proposed instructions later. Defense counsel did not object.

---

[3] The instruction as issued by the trial court is set forth below.

6

After two more days of trial, the prosecution called Maryah Powers to the stand. In response to the first two questions, Powers invoked her Fifth Amendment right not to answer. The prosecution continued questioning her, and she answered several questions before once again invoking her right not to answer. The court asked whether the prosecution intended to seek immunity for Powers, and the prosecutor responded, "I am not." Defense counsel did not object. The court asked defense counsel if he had any questions for Powers, and counsel responded, "No, I don't." The court then released Powers.

After the close of evidence, defense counsel requested the following pinpoint jury instruction: "The power to petition the court to grant a witness immunity from prosecution arising out of their testimony at trial, lies solely with the District Attorney." The trial court denied the request and stated the instruction was inappropriate because "immunity granting is within the discretion of the District Attorney's office."

Based on CALCRIM No. 320, the trial court instructed the jury, "A witness may refuse to answer questions that call for privileged information. Under the law, [Angeline], Daniel Mastin, and Maryah Powers were justified in refusing to testify. Do not consider their refusal for any reason at all, and do not guess what his or her answers would have been." The record does not include any objections or requests for modifications to this instruction from either party.

### 3. *Denial of the Requested Instruction Did Not Constitute Prejudicial Error*

Ball's defense hinged on challenging the credibility of Jacob's testimony. In closing argument, Ball asserted that Jacob had lied about Ball shooting him, and that Jacob had actually shot himself. On appeal, Ball contends the denial of his requested pinpoint instruction prevented him from arguing that the prosecution elected not to offer immunity to Angeline, Mastin, and Powers because they would have undercut Jacob's testimony if they had been allowed to testify. Ball argues he had the right to present this argument under *People v. Ford* (1988) 45 Cal.3d 431 (*Ford*), and that the denial of the

7

requested instruction violated his constitutional rights to present a defense and rebut the prosecution's evidence. The Attorney General argues that Ball had no right to the instruction because such an argument would have violated Evidence Code section 913.

In *Ford*, *supra*, 45 Cal.3d 431, Ford and three accomplices were charged with burglary. (*Id.* at p. 436.) After two accomplices pleaded guilty and the remaining accomplice's case was severed, Ford was tried by a jury. None of the accomplices had been sentenced, so each retained the right to invoke the privilege against self-incrimination. Ford testified in his defense and denied any involvement in the burglary, but he did not call any of the accomplices to testify, and none of them exercised the privilege. In closing arguments, the prosecutor rhetorically asked why, if Ford's testimony was true, he did not call the accomplices to testify in his defense. (*Id.* at p. 438.) After the jury found Ford guilty, Ford argued the prosecutor committed misconduct by commenting on the defense's failure to call witnesses who retained the privilege not to testify. (*Id.* at p. 439.)

The California Supreme Court rejected Ford's claim and held the prosecutor's comment did not constitute misconduct under either state or federal law. (*Ford*, *supra*, 45 Cal.3d at p. 449.) The Court held that the comment was not prohibited under Evidence Code section 913 because that rule "has no application unless the privilege has actually been exercised." (*Id.* at p. 444.) Furthermore, the witnesses were not codefendants in Ford's trial, and he made no showing that the witnesses were otherwise unavailable. The Court held the prosecutor's comment did not violate the Fifth Amendment because that amendment "forbids comment on a *defendant's* exercise of the privilege against self-incrimination," and Ford had no standing to invoke the privilege on the accomplices' behalf. (*Id.* at pp. 447, 440.)

The Court acknowledged, however, that the specific circumstances of some cases might justify prohibiting such comment. "We recognize that a rule permitting comment on a defendant's failure to call witnesses is subject to criticism if applied when the reason

8

for his failure to do so is ambiguous, or if the defendant is simply standing on his right to have the state prove his guilt. Therefore, the trial court must have discretion to determine when the circumstances of the case are such that comment is not permissible." (*Ford*, *supra*, 45 Cal.3d at p. 447.) The Court limited its holding accordingly: "In holding that a witness must be called, and an assertion of the privilege against self-incrimination upheld by the trial court, as a prerequisite to deeming him unavailable, we do not intend to foreclose preargument rulings that comment is impermissible. Counsel may stipulate that comment will not be permitted or defendant may satisfy the court that the witness cannot be called or that in the circumstances of the case an adverse inference should not be drawn from the failure to call a witness." (*Id.* at pp. 447-448, fn. omitted.)

Ball relies on the following sentence in *Ford*: "The failure of a defendant to call an available witness whom he could be expected to call if that witness testimony would be favorable is itself relevant evidence." (*Ford*, *supra*, 45 Cal.3d at p. 448.) Ball argues that according to this reasoning, the prosecution's failure to present testimony from Angeline, Mastin, or Powers was "relevant evidence" supporting an inference that their testimony would not have been favorable to the prosecution.

The Attorney General argues *Ford* is inapposite because in this case the three witnesses had invoked their rights not to testify, such that Evidence Code section 913 prohibited the parties from commenting on their failure to testify and prohibited the jury from drawing any inferences therefrom. Ball responds that his trial counsel was not seeking to comment on the witnesses' assertion of privilege; rather, he asserts, counsel was seeking to comment on the prosecution's failure to present testimony from witnesses to which the prosecution had access.

### a. *The Record Does Not Support Ball's Claim of State Law Error*

We conclude that any claim of state law error was forfeited. Ball points to nothing in the record showing that defense counsel requested the instruction because counsel wanted it to support an argument based on an adverse inference. The parties discussed

9

the jury instructions in chambers and neither the parties nor the trial court said anything on the record about why defense counsel requested it. Ball's briefing on appeal simply assumes or infers defense counsel wanted it to support an adverse inference, but the record does not support such an assumption or inference. Having failed to raise any argument below that the instruction was necessary to support an argument based on an adverse inference, Ball has forfeited that claim for appeal.

Regardless, even if the trial court had granted the requested instruction, Ball had no state law right to argue an adverse inference based on the prosecution's decision not to immunize the witnesses. Based on CALCRIM No. 320, which is in turn based on Evidence Code section 913, the trial court instructed the jury not to consider the three witnesses' refusal to testify "for any reason at all, *and do not guess what his or her answers would have been.*" (Italics added.) This instruction prohibited the jury from inferring the prosecutor did not immunize the three witnesses because their testimony would have been unfavorable to the prosecutor's case. (See *People v. Brooks* (2024) 99 Cal.App.5th 323, 337 [trial court did not err by instructing jury based on CALCRIM No. 320 where the witness validly exercised the privilege against self-incrimination and the prosecution requested the instruction to prevent the jury from drawing an adverse inference].)

But the record does not show any objection or requests for modification to this instruction. To the contrary, the record indicates that when the prosecutor initially raised the instruction, defense counsel affirmatively responded by e-mail that he had no objection. To the extent Ball's claim on appeal is premised on the jury being allowed to infer that the three witnesses' testimony would have been unfavorable to the prosecution, any claim of state law error is forfeited by the failure to object or seek modification of the trial court's instruction. (*People v. Bolin* (1998) 18 Cal.4th 297, 328.)

10

### b. The Trial Court Did Not Violate Ball's Federal Constitutional Rights

Ball contends the denial of his requested instruction violated his federal constitutional rights to present a defense and rebut the prosecution's case. (See *Simmons v. South Carolina* (1994) 512 U.S. 154, 169 ["Because truthful information of parole ineligibility allows the defendant to 'deny or explain' the showing of future dangerousness, due process plainly requires that he be allowed to bring it to the jury's attention by way of argument by defense counsel or an instruction from the court."]; *Crane v. Kentucky* (1986) 476 U.S. 683, 690 [the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense]; *Chambers v. Mississippi* (1973) 410 U.S. 284, 302 ["Few rights are more fundamental than that of an accused to present witnesses in his own defense."].) The Attorney General argues that the trial court's ruling, as an ordinary application of state law evidence rules, did not violate federal law. "As a general matter, the ordinary rules of evidence do not impermissibly infringe on the accused's right to present a defense. Courts retain, moreover, a traditional and intrinsic power to exercise discretion to control the admission of evidence in the interests of orderly procedure and the avoidance of prejudice." (*People v. Hall* (1986) 41 Cal.3d 826, 834.)

Ball cites no caselaw concerning a defendant's constitutional right to argue an adverse inference based on a prosecution's decision not to seek immunity for a witness. Instead, Ball cites cases concerning the exclusion of evidence or testimony in violation of a defendant's Sixth Amendment rights. (See *Davis v. Alaska* (1974) 415 U.S. 308 [refusal to allow defendant to cross-examine prosecution witness about his probation status violated defendant's right of confrontation]; *Washington v. Texas* (1967) 388 U.S. 14 [defendant was denied his Sixth Amendment right to have compulsory process for obtaining witnesses].) Here, the trial court's ruling did not concern the exclusion or admission of "evidence" as the term is used in those cases—e.g., a witness's testimony; rather, the ruling assertedly impinged on defense counsel's right to present argument. As

11

the closest case on point, Ball cites *Bradley v. Duncan* (9th Cir. 2002) 315 F.3d 1091 [trial court's failure to instruct the jury on defendant's theory of entrapment violated due process].)  None of these cases compel the conclusion Ball urges here.

We acknowledge, as other courts have, that a prosecutor's sole discretionary power to seek immunity for witnesses necessarily provides the prosecution with a potential tactical advantage.  (See, e.g., *People v. Sutter* (1982) 134 Cal.App.3d 806, 816 (*Sutter*) [a criminal proceeding is not "symmetrical" as the prosecution and defense have different rules, powers, and rights].)  But both California courts and federal courts have generally upheld this rule where the prosecutor's decision not to grant immunity does not constitute prosecutorial misconduct.  (See *People v. Masters* (2016) 62 Cal.4th 1019, 1051-1053 (*Masters*) [California courts have no authority to confer use immunity on witnesses, and the prosecutor's decision not to grant immunity to a witness was not egregious, unfair, deceptive, or reprehensible]; *People v. Hull* (2019) 31 Cal.App.5th 1003, 1023 ["While judicial immunity has been foreclosed, our high court in *Masters* recognized that prosecutorial immunity could be compelled as a requirement of due process if the prosecutor's refusal to grant immunity amounts to prosecutorial misconduct."]; *Sutter,* at p. 815 ["No United States Supreme Court decision has construed the Fifth and Sixth Amendments to grant the trial court the power to confer judicially declared use immunity to a witness called by the defense."].)

Ball cites no authority on point, and the record in this matter would not support this court's crafting a constitutional rule sui generis.  As noted above, the record does not show why defense counsel requested the pinpoint instruction at issue; there is nothing in the record indicating counsel intended to argue an adverse inference from the prosecutor's decision not to immunize Angeline, Mastin, or Powers.

Ball does not contend that the prosecutor committed misconduct by declining to immunize the witnesses for improper reasons—e.g., to prevent the defense from introducing "clearly exculpatory" evidence.  (See *Masters*, *supra*, 62 Cal.4th at pp. 1051-

12

1052; see also *People v. Force* (2019) 39 Cal.App.5th 506, 514 [prosecutors are not allowed to engage in conduct that undermines the willingness of a defense witness to take the stand, which includes making statements to the effect that the witness would be prosecuted for any crime they committed in the course of testifying].) Nor would the record support an allegation of improper prosecutorial motives. The prosecution's pretrial filings alleged that at least two of the witnesses may have engaged in conduct exposing them to criminal liability in connection with this case. All three witnesses were represented independently by court-appointed counsel, and two of the witnesses cited their counsel's advice to invoke the privilege against self-incrimination. (See *People v. Mincey* (1992) 2 Cal.4th 408, 442, fn. 7 (*Mincey*) [witness was independently represented by counsel, and her counsel's advice to invoke the privilege against self-incrimination did not establish prosecutorial manipulation or any other impropriety].) The trial court required the invocations to take place outside the presence of the jury, and the court expressly or impliedly sustained the invocations as valid under the Fifth Amendment.

Ball does not cite any specific testimony that the three witnesses could have provided in support of his defense. "A defendant's rights to due process and to present a defense do not include a right to present to the jury a speculative, factually unfounded inference." (*Mincey*, *supra*, 2 Cal.4th at p. 442.) Without citing facts or evidence that might have been introduced had any of the witnesses testified, Ball simply asserts that the prosecution's decision not to immunize them supported the inference that they would have testified unfavorably to the prosecution's case by contradicting Jacob.

The underlying logic for an adverse inference based on a party's failure to call a witness does not support Ball's bare assertion in this case. In *Ford*, the Court looked to the historical justification for drawing an adverse inference from the omission of a witness: "The omission traditionally has been considered an admission by conduct—an admission that the witness's testimony would not be favorable. [Citations.]" (*Ford*, *supra*, 45 Cal.3d at p. 448.) As set forth in a source the Court cited for that observation,

13

"The party's behavior is interpreted as an indication of knowledge that his opponent's evidence is true, or at least that the tenor of the evidence withheld would be unfavorable to his cause. The basis of the inference from conduct to fear of exposure is said to be 'our experience of the operation of human nature.' Courts traditionally have explained that the psychological basis for the rule is the instinct of self-preservation: fear of criminal punishment and the disgrace of conviction, or deep anxiety over a threat to one's honor, would naturally compel a person to produce in court any favorable evidence he possessed." (Comment, *Drawing an Inference from the Failure to Produce a Knowledgeable Witness: Evidentiary and Constitutional Considerations* (1973) 61 Cal.L.Rev. 1422, 1423, footnotes to citations omitted.)

By contrast, a prosecutor's decision not to immunize a witness who has invoked the privilege against self-incrimination may be motivated by factors apart from the possibility that the witness may testify unfavorably to the prosecution. A prosecutor may conclude it is not in the interests of justice to grant immunity to a witness who has engaged in serious criminal conduct.[4] The prosecution may also wish to preserve the ability to bring charges against the witness based on conduct that is likely to be a subject of their testimony. Even a limited grant of use immunity may effectively prevent the successful prosecution of such charges. (See *Kastigar v. U.S.* (1972) 406 U.S. 441, 461-462 [a defendant's showing that they testified under a grant of immunity shifts a heavy burden to the government to prove that all the evidence it proposes to use was derived from legitimate independent sources].) A prosecutor may also anticipate that even if the witness would provide testimony favorable to the prosecution, the defense is likely to point to a grant of immunity to impeach the witness's credibility—just as defense counsel in this case cited the immunity granted to Jacob to attack the credibility of his testimony.

---

[4] We note that when the prosecution petitioned the court to grant immunity to Jacob, Ball's trial counsel objected on the grounds that it "sends the wrong message to the public and is contrary to the best interest of the public."

14

In summary, Ball points to nothing in the circumstances of this case that persuades us his rights were violated under either state law or federal constitutional law. For all the reasons above, we conclude this claim is without merit.

### B. *Sufficiency of the Evidence for a Prior Strike Conviction*

Ball contends the evidence was insufficient to prove his prior conviction for aggravated assault under section 245, subdivision (a)(1) in 2012 constituted a serious or violent felony. The Attorney General argues that the abstract of judgment for the 2012 conviction proved it was a serious felony under *People v. Briceno* (2004) 34 Cal.4th 451 (*Briceno*) because the abstract shows a gang enhancement under section 186.22, subdivision (b)(1) was admitted or found true in connection with the assault conviction.

#### 1. *Procedural Background*

The prosecution alleged Ball had suffered a prior strike conviction in 2012—specifically, a conviction for violating section 245, subdivision (a)(1). Ball waived his right to a jury trial on the strike prior allegation, and it was tried to the court. In the bifurcated portion of the trial, the prosecution introduced into evidence an abstract of judgment for the conviction. The abstract listed a conviction by plea entered on July 5, 2012, under section 245, subdivision (a)(1), described as "ASSAULT W/DEADLY." The abstract indicated the crime was committed in 2011, and the abstract listed an admission or true finding on a gang allegation in connection with the offense under section 186.22, former subdivision (b)(1). Based on the abstract of judgment and the minutes for the sentencing hearing, the trial court found beyond a reasonable doubt that Ball had suffered a prior conviction for assault with a deadly weapon under section 245, subdivision (a)(1).[5] At sentencing, the trial court doubled the terms on counts 2 and 4 based on the finding of a strike prior.

---

[5] The minutes for the sentencing hearing are not in the record on appeal. The transcript of the hearing indicates the trial court accessed the minutes on the court's computer system.

### 2. *Legal Principles*

To qualify as a "strike" for the purpose of sentencing enhancements, the prior conviction must be a "violent felony" under section 667.5, subdivision (c), or a "serious felony" under section 1192.7, subdivision (c). (*People v. Bautista* (2005) 125 Cal.App.4th 646, 654.) "The People must prove each element of an alleged sentence enhancement beyond reasonable doubt. [Citation.] Where . . . the mere fact that a prior conviction occurred under a specified statute does not prove the serious felony allegation, otherwise admissible evidence from the entire record of the conviction may be examined to resolve the issue." (*People v. Delgado* (2008) 43 Cal.4th 1059, 1065 (*Delgado*).)

"On review, we examine the record in the light most favorable to the judgment to ascertain whether it is supported by substantial evidence. In other words, we determine whether a rational trier of fact could have found that the prosecution sustained its burden of proving the elements of the sentence enhancement beyond a reasonable doubt." (*Delgado, supra,* 43 Cal.4th at p. 1067.) " '[The] trier of fact is entitled to draw reasonable inferences from certified records offered to prove a defendant suffered a prior conviction . . . .' [Citations.] '[O]fficial government records clearly describing a prior conviction presumptively establish that the conviction in fact occurred, assuming those records meet the threshold standards of admissibility.' " (*Id.* at p. 1066.)

### 3. *Sufficient Evidence Supported the Sentencing Enhancement*

In his opening brief, Ball contended the evidence was insufficient to show that his 2012 conviction under section 245, subdivision (a)(1) was a prior serious felony conviction under the "Three Strikes" Law. The Attorney General responded that under the current version of section 245, subdivision (a)(1), aggravated assault is defined as assault with a deadly weapon, which is a serious felony under section 1192.7, subdivision (c)(31). The Attorney General acknowledged, however, that this version of section 245 took effect January 1, 2012, and that a conviction under the prior version of section 245, subdivision (a)(1)—the version in effect at the time Ball committed the

16

offense in 2011—did not necessarily constitute a violent or serious felony. That version of the statute made it a felony offense to "commit[ ] an assault upon the person of another with a deadly weapon or instrument other than a firearm *or* by any means of force likely to produce great bodily injury." (§ 245, former subd. (a)(1), italics added.) "Although use of a deadly weapon and great bodily injury were interchangeable for purposes of conviction under former section 245, subdivision (a)(1), under the Three Strikes law only assault with a deadly weapon constitutes a serious felony. [Citations.] Accordingly, the mere fact of a conviction for aggravated assault under former section 245, subdivision (a)(1) would be insufficient to establish the prior conviction was a strike in any case in which the verdict or plea did not specify the precise means used to commit the offense." (*People v. Learnard* (2016) 4 Cal.App.5th 1117, 1122.)

Accordingly, in his respondent's brief, the Attorney General asserted, "[T]he record does not establish that appellant's 2012 conviction under former section 245, subdivision (a)(1), was for assault with a deadly weapon." The Attorney General argued that the record nonetheless proved the prior conviction was for a "serious felony" because the abstract of judgment showed the conviction included a gang enhancement under section 186.22, subdivision (b)(1). Under section 1192.7, subdivision (c)(28), a serious felony includes any prior "felony offense, which would also constitute a felony violation of Section 186.22." "[S]ection 1192.7(c)(28) includes within its ambit any felony offense committed for the benefit of a criminal street gang under the section 186.22(b)(1) gang sentence enhancement." (*Briceno, supra,* 34 Cal.4th at p. 459.)

We requested supplemental briefing on the relevance, if any, of Assembly Bill No. 333 (Assembly Bill 333). (See *People v. Fletcher* (2023) 92 Cal.App.5th 1374 (*Fletcher*), review granted Sept. 27, 2023, S281282 [Assembly Bill 333 does not alter the definition of a serious felony or strike prior, and to the extent it can be construed to do so, it runs afoul of constitutional requirements regarding legislative amendment of ballot initiatives]; *People v. Farias* (2023) 92 Cal.App.5th 619 (*Farias*), review granted

17

Sept. 27, 2023, S281027 [Assembly Bill 333 amendments to section 186.22 would apply on remand in determining whether prior conviction satisfied the required elements to qualify as a serious felony].)[6] The Attorney General contends *Fletcher* properly holds Assembly Bill 333 does not alter the definition of a serious felony or strike prior in Ball's case. Ball argues that Assembly Bill 333 applies retroactively to the definition of a serious felony in his case, and that the evidence is insufficient to show the gang enhancement would qualify as a valid enhancement under the current version of section 186.22.

Upon a close examination of the record, we conclude it is unnecessary to resolve this doctrinal dispute. First, the abstract of judgment shows Ball entered his plea in July 2012, at which time section 245, subdivision (a)(1) had been amended to exclude assault "by any means of force likely to produce great bodily injury." (Stats. 2011, ch. 183, § 1.) Although Ball committed the offense in 2011, he could not have entered a valid plea to violating section 245, subdivision (a)(1) in 2012 based on an assault "by any means of force likely to produce great bodily injury." And Ball points to nothing in the record that might suggest he erroneously pleaded to the offense under that prong.

Second, a clerical notation in the abstract of judgment describes the crime as "ASSAULT W/DEADLY," indicating Ball was convicted of assault with a deadly weapon. Ball does not dispute that this notation stands for "assault with a deadly weapon," and there is nothing in the abstract to suggest he was convicted under the "great

---

[6] The California Supreme Court granted review in both cases to resolve this conflict. The court limited review to the following issues: "(1) Does Assembly Bill No. 333 amend the requirements for a true finding on a prior strike conviction (Pen. Code, §§ 667, subds. (b)-(i) & 1170.12, subds. (a)-(d)) and a prior serious felony conviction (Pen. Code, § 667, subd. (a)), or is that determination made on 'the date of that prior conviction'? (See Pen. Code, §§ 667, subd. (d)(1) & 1170.12, subd. (b)(1).) (2) Does Assembly Bill No. 333 (Stats. 2021, ch. 699), which modified the criminal street gang statute (Pen. Code, § 186.22), unconstitutionally amend Proposition 21 and Proposition 36, if applied to strike convictions and serious felony convictions?" (*People v. Fletcher* (2023) 313 Cal.Rptr.3d 328 [535 P.3d 536].)

bodily injury" prong of section 245, former subdivision (a)(1). In a case on point, the California Supreme Court held a description in a clerical notation on the abstract of judgment constituted sufficient evidence to support the trial court's finding on this point. (*Delgado*, *supra*, 43 Cal.4th at pp. 1069-1072 [abstract of judgment with clerical notation "Asslt w DWpn" was sufficient evidence to support finding that prior conviction was a serious felony].) "Where, as here, the abstract first identified the statute by section number, then separately and clearly described only one of the two means by which the statute can be violated, the court was not required to assume the descriptive language was mere surplusage. Absent any rebuttal evidence, the court could reasonably infer that the words were there for a reason, that they meant what they said, and that they accurately set forth the form of violation for which the defendant was convicted." (*Id.* at p. 1071.)

Applying *Delgado* here, we reach the same conclusion: The clerical notation "ASSAULT W/DEADLY" in the abstract of judgment constitutes sufficient evidence that Ball was previously convicted of assault with a deadly weapon, which constitutes a serious felony under section 1192.7, subdivision (c)(31). This claim is therefore without merit.

### III.    DISPOSITION

The judgment is affirmed.

_____

Greenwood, P. J.

WE CONCUR:

_____

Danner, J.

_____

Wilson, J.

H050308 People v. Ball